FRANCIS SELDEN, APPELLANT, *v.* LAWRENCE MYERS, PHILIP PIKE, WALTER LENOX, AND JAMES C. McGUIRE.

A person dealing with an unlettered man who can neither read nor write, and taking from him a promissory note for the payment of money and a deed for property, in trust, to secure the payment, is bound to show, when he seeks to enforce them, that they, or the material parts of them, were read and fully explained to the party before they were executed, and that he fully understood their meaning and effect.

If this fact is established by positive and unimpeached testimony, parol evidence cannot be received, to show that the contract was different from that expressed in the writings, or that nothing was at that time due from the party who executed the instruments.

THIS was an appeal from the Circuit Court of the United States for the District of Columbia.

It was a bill filed by Selden, under the circumstances particularly stated in the opinion of the court. The Circuit Court dismissed the bill, and Selden appealed to this court.

It was argued by *Mr. Coxe* and *Mr. Webb* for the appellant, and by *Mr. Bradley* for the appellees.

As this was a case depending entirely upon testimony, where no general principle of equity jurisprudence was involved, the arguments drawn from that testimony are omitted.

Mr. Chief Justice TANEY delivered the opinion of the court.

This is an appeal from the Circuit Court for the District of Columbia.

It appears that the appellant, for some years before the execution of the instruments hereinafter mentioned, kept a restaurant in the city of Washington, and had considerable dealings with Lawrence Myers & Company, who are merchants in New York, and who, from time to time, had supplied him with liquors for the use of his restaurant. On the 31st of December, 1846, the appellant gave his promissory note for $1,246.68 to Lawrence Myers & Company, payable with interest on the 1st of January, 1849, for value received; and on the same day he executed a deed to Walter Lenox, of the city of Washington, which recites that he is indebted to Lawrence Myers and Philip Pike, of the city of New York, trading under the name of Lawrence Myers & Company, in the sum of $1,246.68, for which sum they held his promissory note, dated the 31st of December, 1846, drawn to the order of the said Lawrence Myers & Company, payable on the 1st of January, 1849, and that the appellant was desirous to secure the payment of the said debt, and all interests and costs that may accrue thereon; and then proceeds to convey certain real property in the city of Washington to the said Lenox, in trust; that in case the appellant should fail to pay the said debt, or any part thereof, or any proper costs or charges that may accrue thereon, then, at the request of the holders of the said note, due and unpaid, to sell the said premises, (or such part thereof as the trustee may deem necessary to pay so much of the debt as shall be then unpaid,) in such manner, after such notice, at such time and place, and upon such terms and conditions, as the trustee shall deem most convenient for the interest of all concerned, and convey the same in fee simple to the purchaser.

This deed was duly acknowledged by Selden, according to law, before two justices of the peace for the county of Washington, and recorded among the land records of the county.

Some years after the expiration of the credit mentioned in these instruments—that is to say, in 1853—the trustee, at the request of Lawrence Myers & Company, advertised the premises to be sold on the 18th of July in that year; and thereupon Selden filed this bill to obtain an injunction to stay the sale.

The bill states, that in 1846 the appellant had a settlement of accounts with Lawrence Myers & Company; and after the

settlement, Myers, in order to enable him to carry on his business, agreed that the company would make advances to him from time to time in goods or money, as he should need them, provided he would give them his note for $1,246.68, payable on the 1st of January, 1849; that he accepted the proposition, and thereupon executed the promissory note above mentioned; and afterwards, at the request of Myers, executed the deed of trust to Lenox.

The bill further charges, that it was the distinct understanding of the parties that advances should be made to the amount set forth in the note; but that only a small advance of about two hundred dollars had afterwards been made, and that sum diminished by sundry payments made by appellant; that the property conveyed by him in trust was of much greater value than the amount of the note; that he can neither read nor write; and when he executed the deed, did not know that the whole of said property was included, and was under the impression that it conveyed only a portion of it.

The bill further charges, that Lawrence Myers & Company persuaded him to execute the deed with the intention to defraud him, and since its execution had refused to make advances to him in money or goods; that the west half of the lot conveyed in trust was advertised for sale by the trustee, and if the sale was allowed to proceed he would be injured and defrauded.

The members of the firm of Lawrence Myers & Company, and Lenox, the trustee, and McGuire, the auctioneer, were made parties defendants to the bill.

The answer of Lawrence Myers, who answers separately, denies that the note was given for the purpose stated in the bill, and states that it was given upon a settlement of accounts for goods before that time sold to the appellant, and for the amount which the appellant acknowledged to be then due; that the deed was executed voluntarily, and with full knowledge of its contents, and after it had been read and explained to him, and denies all fraud charged in the bill.

The respondent also denies that the property conveyed was more than sufficient to pay the debt; that the east half of it had been previously mortgaged, and had since been sold to pay that debt, and the remaining half is not more than sufficient to pay the debt due to the defendant. He admits that the appellant is entitled to a credit of $119.70, with interest from the 11th of September, 1845, on account of so much money received on a note of a certain William Walker, assigned by the appellant to Lawrence Myers & Company.

The answer of Philip Pike, the other partner in the firm, is

substantially the same with that of Myers, as far as he has knowledge. But he was not in Washington when the note was taken and the conveyance made, and had therefore no personal knowledge of that transaction.

And the answer of Lenox, the trustee, states that he prepared the deed, at the request and according to the instructions of Lawrence Myers; that Selden and Myers met together at his office, on or about the day of the date of the deed; that he laid the note and deed before the parties; that he cannot charge his memory that the entire deed, word for word, was read to the parties, but avers that the description of the property conveyed, and the nature and purport of the deed, were made known and explained to each of the parties, and so much read as was necessary for that purpose; that the transaction was the subject of conversation between the parties in his presence; and that Selden showed a clear knowledge of its character and purpose, and that it was declared by both parties that it was a settlement between them of past dealings and accounts; and that the note and deed were prepared by him, and strictly conformed to the views of both parties, as made known to him by each of them. They were not signed in his presence, but taken away by Myers, in company with Selden. And he denies all fraud and deceit charged in the bill.

Testimony was taken on both sides. On the part of Selden several witnesses were examined, who state that, from conversations between Selden and Myers, at which they were present, about the time when the note and deed were executed, or shortly before the advertisement for the sale, they understood that Selden owed nothing to Myers & Company when they were given, and that they were intended to secure future supplies which Myers & Company were to furnish. But none of these witnesses were present when they were executed, and none of them know whether they were or were not read and explained to the parties before they were signed. And, certainly, parol testimony is altogether inadmissible to show that the contract was different from the one reduced to writing, unless it can also be shown that the party was fraudulently deceived and misled as to the contents of the written instruments.

It is true that Selden is an unlettered man, and can neither read nor write. He makes his mark to the instruments he executed; and, dealing with such a person, it is incumbent on Myers & Company to show, past doubt, that he fully understood the object and import of the writings upon which they are proceeding to charge him; and if they had failed to do so, the above-mentioned testimony offered by the appellant, as to

the state of the accounts between them at the time, would have furnished strong grounds for inferring that he had been deceived, and had not understood the meaning of the written instruments he signed. But the testimony offered by Myers & Company is conclusive on this point. Lenox, who was necessarily made a defendant in these proceedings, was, by consent of parties, examined as a witness on the part of Myers & Company, and in his testimony he confirms the statement made in his answer in every particular. He proves that the parties were together at his office; that they talked of their accounts while there, and that Selden admitted that the balance due from him at that time to Myers & Company was the amount for which the note was given. He says, "I read so much of it (the deed) to the parties as explained its object, the amount of the note, and the description of the property, and the purposes; and it was admitted by both parties that it was right, and received from me as such by them together, and they left my office for the purpose of executing it." The testimony of this witness is not impeached, nor his statement of facts contradicted by any witness for the appellant, and is therefore a decisive answer to the allegations in the bill of the appellant.

Nor is there any ground for supposing that Selden, in his ignorance of accounts, was deceived or imposed upon as to the balance actually due. The accounts of the dealings between the parties up to that time have been produced by Myers & Company, and proved to be correct by the clerks who were at that time in their employment, and whose duty it was to keep them; and these accounts show that the balance then due was the amount for which the note was taken.

In this view of the subject, it is unnecessary to examine particularly the testimony of the different witnesses produced by the complainant. They no doubt speak to the best of their recollections; but every one knows how liable a party is to be led into mistakes who hears casual conversations about accounts in which he has no interest, and how liable they are to be mistaken, when some years have elapsed, both as to the particular time when the conversation took place and the precise language used by the speaker. And the strong probability is, that the conversations of which they speak, and in which they understood Myers to admit that he had been paid, related to the small transactions which took place after these instruments were executed; for it appears that liquors were supplied by Myers & Company after this settlement, and for which Selden made some payments; and this account, it appears, was not adjusted and balanced when the property was advertised for sale, and there was some controversy about it. The deposi-

tions of these witnesses were taken many years after the instru-·ments of writing were executed, and after these conversations are supposed to have passed, and the accuracy of their recollection in such a matter can hardly be relied on as to time or language; and they, as well as Selden, who is an unlettered man, and incapable of keeping accounts, and who does not appear to have had any regular books kept by a clerk, would most likely have but a confused recollection of these conversations, and might, without any evil intention, confound what had been said in relation to dealings subsequent to the note with conversations which passed at the time it was executed.

And this view of the subject is strengthened by the fact, that although Selden states in his bill that he had a settlement with the company of all accounts at that time standing unsettled between him and the firm, he does not state that nothing was found due from him on that settlement, nor does he say that the balance against him, if any, was paid. His statement of a settlement is no doubt true; but it is evident from the testimony that, upon that settlement, the sum claimed by Lawrence Myers & Company was found to be due, and the note and deed given to secure it.

We see no reason, therefore, for disturbing the decision of the Circuit Court dismissing the bill; and the decree must be affirmed, with costs.