JAMES THORN v. GARDNER W. THORN.

*Rescission of deed unfairly procured.*

An octogenarian, who had been living with one of his sons, went to live with another to whom he gave a general power of attorney to dispose of his real estate, worth about $5000. He was feeble and in such condition as to be easily wrought on, and he was induced to convey his land to this son, for an expressed consideration of $4000, most of which was illusory. He did not understand, however, that he was absolutely depriving himself of his property. Such securities as he received in return, from his son, he gave up or destroyed. *Held*, on his bill for rescission of the conveyance, that the son's dealings, especially as they were carried on while acting in a fiduciary capacity as his father's agent and factotum, were intrinsically wrong, and that rescission should be granted; also that the son had no equity to recover his outlays on his father, as he had been in possession of the property, and had taken advantage of his father's residence with him to further his designs.

A decree for the rescission of a deed and for reconveyance may stand in lieu of the reconveyance until made.

Appeal from Jackson. (Gridley, J.) June 15.—June 22.

Bill to set aside deed. Complainant appeals. Reversed, and decree ordered.

*E. Baldwin, Austin Blair* and *Edwin Willits* for complainant. One who is in the relation of equitable guardian to another cannot be a purchaser or a donee of his ward's property: *Clute v. Baron* 2 Mich. 192; *Moore v. Mandlebaum* 8 Mich. 433; *Tabor v. Mich. Mutual Life Ins. Co.* 42 Mich. 669; *Bishop v. Aldrich* 48 Wis. 619; Adams' Eq. Jur. 185; Story's Eq. Jur. 307.

*O. E. Angstman* for defendant. If a grantor has power to contract, his mental weakness alone is not ground for setting aside his deed: *Campbell v. Campbell* 51 Ia. 713; the burden of proving incompetency of a grantor is on those assailing the deed: *Brown v. Brown* 39 Mich. 792; *Gibbons v. Dunn* 46 Mich. 146; and complainant must prove his case

beyond a reasonable doubt: *Hourtienne v. Schnoor* 33 Mich. 274; *Case v. Peters* 20 Mich. 298; *Hunter v. Hopkins* 12 Mich. 227; *Reynolds v. Campbell* 45 Mich. 529; *Tilden v. Streeter* 45 Mich. 533; *Haines v. Thomson* 70 Penn. St. 434; an agreement for support is a sufficient consideration for a deed: *Goff v. Thompson* Har. Ch. 60; inadequacy of price will not defeat a deed unless gross and sufficient to imply fraud: *Haynes v. Swann* 6 Heisk. 560; settlements between father and son are not to be discouraged: *Bowen v. Lockwood* 26 Mich. 441; gifts are favored: *Millicin v. Millicin* 24 Tex. 426; long acquiescence on a grantor's part estops him equitably from contesting his deed: *Disbrow v. Jones* Har. Ch. 104; *Street v. Dow* id. 427; *Campau v. Van Dyke* 15 Mich 371; *Truesdail v. Ward* 24 Mich. 134; *Wilbur v. Flood* 16 Mich. 40; *Rath v. Vanderlyn* 44 Mich. 597.

CAMPBELL, J. Complainant brought this suit in equity to obtain the rescission of a deed made by him to defendant of a farm in Monroe county, which was worth not far from $5000, and which was his chief estate. The deed was made in 1875, when complainant was about eighty years old, defendant being one of his sons with whom he had then lived since 1872. The deed is claimed to have been obtained by fraud and undue influence. The circuit court of Jackson county, into which the case was removed because the judge of Monroe had been of counsel, dismissed the bill, and complainant appeals.

The testimony is prolix, and it would not be useful to enlarge upon the facts. In our opinion the transaction as it stands, viewed in the light of circumstances, is not open to any serious doubt as to its true character.

In 1872 complainant who had been living with his son Enoch, in Washtenaw county, went down to visit his son Gardner; the defendant, and remained with him for several years. At this time he had no other children living, but had some grandchildren. He owned the farm in question, which was under a lease for three years from March 1, 1872, to William Thorn and William H. Collar, on a rent

of $150 a year in addition to all taxes and assessments, ordinary and extraordinary. The lessees under this lease had an option of purchase at $5000. Complainant had also some personal property, and a sum of money not ascertained in amount.

Not a great while after going to live with defendant, complainant gave him a general power of attorney not only to lease but also to sell his real estate, and to collect rents. He also seems to have executed several different wills. He is shown to have been in some way induced to believe that his son Enoch had defrauded him of eighteen hundred dollars, and that he was only safe under defendant's watchfulness. This idea about Enoch was absolutely unfounded. It was such a delusion as either indicated mental unsoundness—which we do not think existed—or such a working upon his suspicions as completely led him astray. The facts seem to be that, while at this period he was not insane, he was affected by a disorder which rendered him weak in mind and body, and peculiarly liable to be handled by designing persons. Between the arrival at defendant's and the execution of the deed in 1875, complainant gave defendant a voluntary note for $1000, and signed with him a note to one Stone for $500, which defendant claims was borrowed for complainant, but which we are satisfied was for defendant's own benefit. During this same period also, there were opportunities for selling the farm for $4500, which were not accepted by defendant.

On the 23d of February, 1875, complainant made the warranty deed now in suit to defendant for an expressed consideration of $4000, and defendant claims that it was an actual sale and not a gift. Complainant claims he did not understand that he was making such a transfer to defendant, but supposed he was making a will. There was no occasion for his selling to defendant or to any one, inasmuch as he had an income beyond his wants. The sale, if made for $4000, was at a large sacrifice for which no reason appears But the alleged consideration and the fact of a sale, prop-

erly so called, cannot be reconciled with any plausible theory of a fair transaction.

To make up the $4000, or $4500, whichever is claimed to have been the real sum, defendant explains that his father had willed him $2000; that defendant gave up the before-mentioned note of $1000, and agreed to pay the Stone note of $500 and interest; and the balance was made up out of an agreement to support complainant, for which a security of $1000 was given. Apart from the agreement to support, these considerations were entirely illusory. Complainant was not bound on any of them, and none of them could have been enforced. But the facts do not indicate that any such consideration was agreed on. It is entirely clear that when this deed was made complainant made some kind of a will, and that then or thereafter some bond or other agreement was made by defendant, which was intended for something more than mere support. Complainant, if he understood the matter at all, which is doubtful, understood that he was not depriving himself entirely of property, as he would have done if defendant's claim is true. These papers were left with the judge of probate who afterwards delivered them to defendant on his suggestion that his father desired it. These papers have disappeared, and according to defendant were voluntarily destroyed by complainant who chose to remain without written security. In 1876 defendant procured a receipt in full to be prepared, whereby complainant acknowledged full payment for his property, but it is clear he received nothing for it, and was left utterly destitute.

If we gave credit to defendant's own version of these transactions, complainant has, while living with defendant, allowed him to absorb his personal property and all of his real estate, and is left without anything to represent it, and without any security whatever for his support. He has been rendered practically a pauper, and has destroyed or given up such partial assurances as he at one time had. That such a result has been the deliberate and understood purpose of a person of sound mind and free from fraud or un-

due influence, is preposterous. Such a state of things indicates beyond question either incapacity or dishonest management or both. We think there is enough appearing in the case to indicate cunning and deception. But the dealings, however managed, are intrinsically wrong when a person in the fiduciary relation occupied by defendant as his father's agent and factotum, manages to get all that his father possesses into his own hands. Nothing but a clear and satisfactory explanation could under any circumstances save dealings which have such an outcome. The old man's feebleness of memory left him very much at defendant's mercy, but defendant's own showing is anything but satisfactory.

Upon the whole case we think complainant has made out a case for rescission. Defendant's counsel suggested that he should be allowed compensation for his expenditures, and for the care of the old man. We think his possession of the property has given him sufficient compensation for what he has spent on it, and that he has no equity to recover his other outlays, which we cannot but think greatly exaggerated, when the old man's residence with him was constantly taken advantage of to further defendant's unlawful designs.

The decree must be reversed with costs of both courts, and the deed rescinded and a reconveyance decreed,—the decree to stand meanwhile in lieu of a conveyance.

The other Justices concurred.