# THE HANNA MINING COMPANY v.
# MARY BRLETICH.

175 N. W. (2d) 923.

February 27, 1970—No. 41650.

*Fena, Randall & Murray* and *Jim Randall,* for appellant.
*John Weber,* for respondent.

Heard before Knutson, C. J., and Nelson, Murphy, Otis, and Rogosheske, JJ.

OTIS, JUSTICE.

This is an action for specific performance of a contract to sell real estate. The defendant claims that by virtue of her illiteracy she failed to understand the effect of the contract. The case was tried without a jury and judgment entered in favor of plain-

tiff. The narrow issue is whether the evidence supports the trial court's finding that "[d]efendant understood and mutually assented to the material portions of the option at the time she signed same on June 29, 1967." We hold that it does.

The property in question consists of 97 acres in St. Louis County, 3 miles south of the town of Keewatin, Minnesota. The legal description is as follows:

The E 1/2 of lot 1; lot 6, NE 1/4 of NE 1/4; lot 7, SE 1/4 of NE 1/4, all in sec. 6, T. 56 N., R. 21 W.

Defendant at the time of trial was 75 years of age and had been a widow for 17 years. She immigrated to America from Croatia in 1920 and lived with her son, Matt Brletich, in the town of Keewatin. She received no formal schooling and was unable to read or write in any language.

In 1964, negotiations were commenced to secure defendant's property for use as a tailings pond by four mining companies, National Steel Corporation, Inland Steel Company, Itasca Pellet Company, and The Hanna Mining Company. To that end, Mr. George Herbst, an employee of Hanna, secured permission from defendant on May 19, 1964, to inspect the property for purposes of making an appraisal. That was the only phase of the transaction at which defendant was not represented. On June 9, 1964, Herbst and another Hanna employee conferred with defendant and her son and offered to purchase the property at the appraised value of $2,050. Matt was 45 years of age, a high school graduate, and a welder in the employment of The Hanna Mining Company. On behalf of his mother, he declined the offer. On June 18, 1964, Matt and his mother made a counteroffer of $6,000, which plaintiff declined. The next discussion with respect to the sale of the property was on March 12, 1965, when Herbst and a fellow employee of Hanna again visited Mrs. Brletich and her son, at which time defendant demanded $20,000 for the land. Plaintiff made a counteroffer of $10,000. Finally, on June 28, 1967, more than 2 years later, Herbst secured Matt's signature

to an option to sell for $20,000 which he and his mother had previously specified.[1] The following day, defendant executed the option agreement by placing her mark on the instrument in the presence of Herbst, another Hanna employee, and defendant's son. The circumstances of its execution create the fact question which is here for review.

Mr. Herbst stated that he did not explain the contents of the option to Mrs. Brletich but did explain it to her son. He testified:

"I told Matt that by having his mother sign, he and his mother signing this option, that the Hanna Mining Company would have the exclusive right to purchase this property anytime during the period June 28th to October 1st, 1967."

Matt indicated to Herbst that he would discuss the option agreement with his mother. Herbst acknowledged that the only information Mrs. Brletich would have been given was what Matt told her.

On June 30, 1967, plaintiff gave formal notice to defendant that it intended to exercise the option and paid her the $100 called for in the agreement. That check she negotiated. Thereafter, Matt assisted plaintiff in clearing the record title. There was no indication to plaintiff before October 31, 1967, that defendant would not execute a deed. On that date, when the deed was submitted to her she declined to sign it. This litigation followed.

Mrs. Brletich herself testified that her son had not told her she would get $20,000 for the property and that she was not told, nor did she understand, that plaintiff had a right to purchase the property during the period of the option. She stated that she did not know the effect of her signing the agreement. Her son testified that plaintiff did not inform him that his mother would be obliged to sell to plaintiff. He was under the impression that the option merely prevented her from disposing of the property to anyone else for the period which it covered. He testified that

---

[1] The text of the option is set out in full in an appendix.

he had advised his mother that the agreement did not require her to sell to plaintiff.

On November 9, 1967, Matt informed Herbst that the reason his mother would not execute the deed was because she felt she should receive as much for her property as the mining company paid another Brletich family for similar land in the same general area. It appears that relatives were paid $45,000 for 80 acres of land and the trial court found that this was the reason defendant refused to execute the deed.[2]

■ Defendant seeks a reversal on the authority of Selden v. Myers, 61 U. S. (20 How.) 506, 509, 15 L. ed. 976, 977. There, by way of dictum, the court stated in a case where plaintiff was illiterate, "it is incumbent on [defendants] to show, past doubt, that [plaintiff] fully understood the object and import of the writings upon which they are proceeding to charge him." However, we do not find it necessary to pass broadly on the degree and burden of proof in enforcing contracts with persons who are illiterate because the evidence supports the trial court's finding that defendant understood and assented to the terms of the option agreement. The fact that no attempt was made to explain the contract to Mrs. Brletich is immaterial if there was evidence from which the court could find that she was fully advised of its terms and obligations by her son. We are not persuaded by defendant's argument that the option agreement was of such technical complexity an ordinary layman would not understand its effect. It clearly states that The Hanna Mining Company had the exclusive right to purchase defendant's property for $20,000 any time before October 1, 1967, cash to be paid upon delivery

---

[2] Although defendant argues that there was an overreaching in paying her only half as much for 17 acres more, the evidence is undisputed that the other property contained improvements which greatly exceeded in value those located on defendant's property. In any event, were plaintiff to acquire the property by condemnation, the measure of damages would be the market value and not the value based on the peculiar needs of the mining company.

of a warranty deed after written notice of election to purchase. The court had a right to accept the testimony of George Herbst that he explained to Matt Brletich the material terms of the agreement, and to find that Matt, being a mature adult with a high school education, was competent to understand and explain the agreement to his mother. We concur in the court's conclusion that the actual reason Mrs. Brletich refused to discharge her obligation was her after-acquired knowledge that relatives had secured a substantially higher price for what she regarded as comparable property.

For these reasons, we hold that the court's findings are sustained by the evidence.[3]

■ Defendant argues that Hanna materially misrepresented the facts by not disclosing that Hanna was also dealing on behalf of National Steel, Inland Steel, and Itasca Pellet. We find no merit in this contention. Hanna did not represent that it was negotiating only on its own behalf, and the fact that it was acting for undisclosed principals does not constitute fraud. In any event, by the terms of the option agreement, Hanna had a right to designate any grantees it wished. The order of the trial court is therefore affirmed.

Affirmed.

APPENDIX

"OPTION

"For and in consideration of the sum of One Hundred Dollars ($100.00) to us in hand paid, the receipt whereof is hereby acknowledged, the undersigned, hereinafter called 'Sellers', whose address for the purpose hereof is Box 117, Keewatin, Minnesota, hereby grant unto THE HANNA MINING COMPANY, a Delaware corporation, hereinafter called 'Optionee', the exclusive right and privilege from the date hereof until October 1, 1967, to purchase for the sum of Twenty-Thousand Dollars ($20,000.00), of which the above consideration paid

---

[3] The material findings are set forth in the appendix.

herewith is part, the following described property, hereinafter referred to as 'said premises', situated in St. Louis County, Minnesota, to-wit:

"E 1/2 - Lot 1, Sec. 6-56-21.

"Lot 6 (NE-NE),          "

"Lot 7 (SE-NE),          "

subject to all mineral reservations and rights of way for highways and railroads now of record, upon the following terms, to-wit: cash upon delivery to Optionee of a warranty deed conveying good title to said premises.

"Written notice of election to purchase hereunder may be served on Sellers, or either of them, by personal delivery or by mailing by registered mail directed to the above address, such service to be complete at the time of such delivery or mailing. Promptly thereafter Sellers shall deliver to Optionee a currently extended abstract of title to said premises and Optionee shall have thirty (30) days in which to examine the same. If the title to said premises is found defective, Sellers shall within ninety (90) days (or such additional time as may be reasonable under the circumstances) after receipt of written notice from Optionee specifying the defects in the title, perfect such title at their own expense, and the closing of this purchase shall be deferred until such title has been perfected. Optionee shall have the option of waiving or curing any defects, but reserves the right to specific performance.

"All taxes and assessments on said premises due and payable in prior years and in the year of granting of this option shall be paid by Sellers.

"Optionee shall have the right to assign its interest herein and to designate the name of the grantee to which said premises shall be conveyed by Sellers. This option shall run with the land and shall both bind and benefit the respective heirs, representatives, successors and assigns of Sellers and Optionee."

"FINDINGS OF FACT,

CONCLUSIONS OF LAW,

ORDER FOR JUDGMENT.

\* \* \* \* \*

"8. On June 28, 1967, Herbst and Dale Stoneburner, secretary to the general manager of Hanna, contacted Matt at the Pierce Mine in Hibbing, his place of employment, and presented to Matt an option contract (Plaintiff's Exhibit A). Matt signed it in their presence after Herbst informed him that the purchase price would be $20,000.00, that Hanna was not compelled to buy, and that Hanna would have the exclusive right to buy until October 1, 1967.

"9. On the next day, June 29, 1967, Herbst and Stoneburner called

at defendant's house in Keewatin. Matt explained to his mother in Croatian that the option contract then being discussed provided that Hanna wanted the exclusive right to buy until October 1, 1967, her land for $20,000.00, but that Hanna was not compelled to buy it and that it didn't necessarily mean that Hanna was going to buy. After these explanations of the material parts of the option, defendant agreed to sign the option. She signed it with an 'X', witnessed by Herbst and Stoneburner, and in the presence of all four.

\* \* \* \* \*

"14. On October 31, 1967, Herbst called at defendant's home together with one Dimitri Yurchyshyn, a Hanna employee, to complete the transaction and presented a warranty deed (Plaintiff's Exhibit J) for her signature. Matt was present and interpreted for his mother. She refused to sign the deed because she had heard that another Brletich family had received $45,000.00 for their property nearby. Plaintiff had tendered payment of $20,000.00.

\* \* \* \* \* \*

"17. Defendant understood and mutually assented to the material portions of the option at the time she signed same on June 29, 1967.

\* \* \* \* \*

"20. There is no evidence to support a claim of fraud, intimidation, harassment, or misrepresentation on the part of plaintiff."